**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT COURT OF ARKANSAS

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

FEB 1 7 2009

CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| LAURIE R. CRAMTON | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO. 09-3015 |
| vs. | ) |
| | ) |
| FLIPPIN SCHOOL DISTRICT | ) JURY TRIAL REQUESTED |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Laurie R. Cramton, by and through the undersigned counsel, Bailey & Russo, PLC, Attorneys at Law, and for her Complaint states as follows:

### JURISDICTION AND VENUE

1. Claims in this cause of action are asserted under 42 U.S.C. § 2000e-2, *et seq*.

2. As such, this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue and jurisdiction are therefore proper in this Court pursuant to 28 U.S.C. §1391(b) and (c).

### PARTIES

4. Plaintiff Laurie R. Cramton, at all relevant times herein, was a resident of Marion County, Arkansas, within this judicial district.

1

5. Defendant, Flippin School District, is a local school district located at 210 Alford Street, Flippin, Arkansas, 72634, which is responsible for providing educational services for the city of Flippin, Arkansas, in Marion County, Arkansas.

## ALLEGATIONS RELATED TO ALL COUNTS

6. Plaintiff was employed by Defendant for a total of twelve years spanning from October of 1991 until July of 2004.

7. Plaintiff obtained a Bachelor's Degree in K-6 Elementary Education, as well as a Master's Degree in Education Administration K-8. Plaintiff also has over sixteen years of experience in elementary education.

8. Plaintiff was employed for ten years, from 1992 until 2002, as a Kindergarten teacher for Defendant, and she was employed for two years, from 2002 until 2004, as a Second-Grade teacher for Defendant. From 1997 until 2004, Plaintiff also served as an Administrative Assistant to the Elementary Principal for Defendant. Plaintiff only left the Flippin School District in 2004 the hopes of obtaining a future administrator position with Defendant since it was recommended to her to leave the Flippin School District before attempting to apply for and obtain an administrative position with Defendant.

9. For the last four years, from 2004 until the present, Plaintiff has worked as an Arkansas Reading First Literacy Coach in the Mountain Home School District in Mountain Home, Arkansas, and Plaintiff has also been extensively involved in the "No School Left Behind" program.

2

10. While employed with Defendant, Plaintiff had previously interviewed on three separate occasions for school principal positions with Defendant during the school years of 2002-2003, 2003-2004, and 2005-2006. On each of these three previous occasions, Plaintiff was selected for an interview along with other female applicants and each time a male was chosen for the position.

11. Plaintiff learned on or about May 31, 2008, that the Flippin Elementary School Principal K-5 position was becoming available upon the current elementary principal's retirement.

12. On or about June 6, 2008, Plaintiff met with Flippin School District Superintendent Dale Query and gave him her resume for the available position of Flippin Elementary School Principal K-5.

13. After scanning her resume, Mr. Dale Query volunteered that this was "not about male or female" and that "we won't discriminate".

14. On or about June 19, 2008, Plaintiff interviewed before a panel consisting of School Board members and administrators for the position of Flippin Elementary School Principal K-5. All six members of said panel were male.

15. Plaintiff's interview consisted of a list of 49 questions asked by Superintendent Dale Query. Approximately one-half of the 49 questions consisted of leadership-based topics, and the remaining one-half of the 49 questions consisted of curriculum-based topics.

3

16. After Plaintiff was finished answering all of the 49 questions, Superintendent Query then opened up the floor to the rest of the group to formulate their own questions for Plaintiff to answer.

17. The interview concluded when Plaintiff was allowed to ask any questions of those present at the interview; and the total interview lasted approximately one hour.

18. Plaintiff was told that the decision as to who received the position would be made that same evening, and she would be called with whether the position would be reopened for additional applicants or whether she did or did not receive the position.

19. Several hours later, Plaintiff was telephoned and informed that she did not receive the job, and she was also informed that the male applicant had been chosen for the position instead allegedly because he was going in the same direction as the school board.

20. On or about July 10, 2008, Plaintiff had a meeting with Superintendent Query regarding why Plaintiff was not chosen for the position of Flippin Elementary School Principal K-5.

21. During that meeting, Plaintiff was informed that during her interview, a rubric had been filled out by each committee member on the 49 questions Plaintiff was asked. When Plaintiff inquired when the committee filled out the rubric since they did not fill it out during Plaintiff's actual interview, Superintendent Query did not know or would not say when the committee filled out their rubrics. He only stated that Plaintiff had scored higher on curriculum, and the male candidate scored higher on leadership. No proof of these conclusions, however, were ever presented to Plaintiff.

4

22. During the meeting, Plaintiff also informed Superintendent Query that she had taken issue with what he had stated during their first meeting that this was not a man vs. woman issue. Superintendent Query informed Plaintiff that he had made that statement due to something that a former superintendent of Flippin Schools had said to Plaintiff more than five years earlier: that a woman would never be an administrator at Flippin.

23. To Plaintiff's knowledge and belief, a female has never held an administrative position with Defendant. Plaintiff has personal knowledge of several other qualified females who have applied for administrative positions with Defendant over the years and have lost the position to male candidates.

24. Plaintiff exceeded the qualifications for the position of Flippin Elementary School Principal K-5. Plaintiff has extensive administrative experience as previously set forth. To Plaintiff's knowledge, the male candidate who was chosen for the position, on the other hand, did not have any administrative experience in his background nor had he ever taught elementary education.

25. Plaintiff was denied the hire for the position of Flippin Elementary School Principal K-5 due to her sex in violation of Title VII of the Civil Rights Act of 1964 as amended.

26. At all relevant times, Defendant's agents, servants and employees involved in this action were acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by Defendant and/or their actions were

ratified by Defendant, thus making Defendant liable for said actions under the doctrine of respondeat superior.

27. Plaintiff filed a Charge of Discrimination with the EEOC on or about July 14, 2008. Plaintiff received her Notice of Right to Sue dated November 24, 2008. See copy of EEOC Notice of Right to Sue attached as Plaintiff's Exhibit "A".

28. Plaintiff hereby demands trial by jury in this action of all issues so triable as a matter of right and hereby designates Fayetteville, Arkansas, as the place of trial.

## COUNT I
## VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964
## DISPARATE TREATMENT BASED UPON SEX

29. Plaintiff incorporates by reference herein paragraph number 1 through 28 as though fully set forth herein.

30. Plaintiff in her cause of action for disparate treatment based upon sex in violation of Title VII of the Civil Rights Act of 1964 against Defendant, states as follows:

31. Title VII of the Civil Rights Act of 1964 provides that it is an unlawful employment practice for an employer "to fail or refuse to hire…any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." See 42 U.S.C. §2000e-2(a)(1).

32. Title VII of the Civil Rights Act of 1964 also provides that it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his

status as an employee, because of such individual's race, color, religion sex, or national origin." See 42 U.S.C. §2000e-2(a)(2).

33. Under Title VII of the Civil Rights Act of 1964, it is impermissible for an employer to consider race, color, religion, sex, or national origin in employment practices. See 42 U.S.C. §2000e-2(m).

34. Under Title VII of the Civil Rights Act of 1964, except as otherwise provided by 42 U.S.C. §2000e-2(m), an unlawful employment practice "is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other facts also motivated the practice." See 42 U.S.C. §2000e-2(m).

35. To Plaintiff's knowledge, Defendant is an employer with 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding year; and, as such, Title VII applies to Defendant in this case.

36. Plaintiff was subjected to sexual discrimination and disparate treatment based upon sex in the hiring process for the position of Flippin Elementary School Principal K-5 by Defendant and refers to all of the facts and allegations previously set forth in this Complaint as the basis of this claim.

37. Plaintiff was treated less favorably by Defendant in regards to consideration for employment because she is a female.

38. Defendant failed to hire Plaintiff for the position of Flippin Elementary School Principal K-5 based upon her sex.

39. Plaintiff, being a female, is a member of a protected class.

7

40. Plaintiff applied and was qualified for the position of Flippin Elementary School Principal K-5 for which Defendant was seeking applicants. In fact, Plaintiff exceeded the qualifications for the position of Flippin Elementary School Principal K-5, and Plaintiff has extensive administrative experience as previously set forth.

41. Despite her qualifications for that position, Plaintiff was rejected and was denied the position of Flippin Elementary School Principal K-5.

42. After Plaintiff's rejection, Defendant filled said position of Flippin Elementary School Principal K-5 with a male candidate. To Plaintiff's knowledge and belief, the male candidate who was chosen for the position was less qualified than Plaintiff as he did not have any administrative experience in his background nor had he ever taught elementary education.

43. Furthermore, while employed with Defendant, Plaintiff had previously interviewed on three separate occasions for school principal positions with Defendant during the school years of 2002-2003, 2003-2004, and 2005-2006. On each of these three previous occasions, Plaintiff was selected for an interview. On each of the three occasions, Plaintiff was not the only female chosen for an interview. On each of the three previous occasions, a male was chosen for the position.

44. Plaintiff was not hired by Defendant because she is female and Defendant has a pattern of sexual discrimination against women in regards to their hiring practices for administrative positions, and refers to the facts and allegations as set forth in this Complaint as the basis for this claim.

45. As such, Plaintiff can establish a claim under Title VII of the Civil Rights Act of 1964 in that she was treated less favorably regarding her consideration for employment because she is a female and can establish by a preponderance of the evidence that Defendant failed to hire Plaintiff for the position of Flippin Elementary School Principal K-5 because she is a female.

46. Plaintiff has been damaged in that she was denied being hired to the position of Flippin Elementary School Principal K-5 based upon acts of Defendant that rise to disparate treatment based upon sex in violation of Title VII of the Civil Rights Act of 1964. Plaintiff asks that the following damages be awarded to her: a court-ordered, permanent injunction to eliminate discriminatory practices in hiring by Defendant; back pay and front pay, or in the alternative damages in an amount equal to the amount of the yearly salary she would have received until she was eligible for retirement from Defendant in an amount in excess of $75,000.00; punitive damages; and Plaintiff's costs and attorney's fees associated with this action.

WHEREFORE, Plaintiff prays for judgment in Count I against Defendant; for actual damages in an amount as is fair and reasonable; for her attorneys' fees, interest and costs; and for all further relief the Court deems just and proper.

## COUNT II
## VIOLATION OF TITLE VII OF THE
## CIVIL RIGHTS ACT OF 1964
## DISPARATE IMPACT BASED UPON SEX

47. Plaintiff incorporates by reference herein paragraph number 1 through 46 as though fully set forth herein.

48. Plaintiff in her cause of action for disparate impact based upon sex in violation of Title VII of the Civil Rights Act of 1964 against Defendant, states as follows:

49. To Plaintiff's knowledge, Defendant is an employer with 15 or more employees for each working day in 20 or more calendar weeks in the current or preceding year; and, as such Title VII applies to Defendant in this case.

50. Plaintiff was subjected to disparate impact based upon sex in the hiring process for the position of Flippin Elementary School Principal K-5 by Defendant and refers to all of the facts and allegations previously set forth in this Complaint as the basis of this claim.

51. Plaintiff, being a female, is a member of a protected class.

52. As previously stated, Plaintiff submitted her resume for the position of Flippin Elementary School Principal K-5 to Superintendent Dale Query who reviewed it and voluntarily stated that this was "not about male or female" and that "we won't discriminate."

53. Plaintiff's interview before a panel consisting of all male School Board members and administrators for the position of Flippin Elementary Principal K-5 consisted of a rubric of 49 questions to be asked by Superintendent Dale Query with notes on Plaintiff's responses taken by the School Board Secretary and several other of the administrators and board members. Approximately one-half of the 49 questions consisted of leadership-based topics, and the remaining one-half of the 49 questions consisted of curriculum-based topics.

10

54. As previously set forth, after Plaintiff learned that she had been denied the position, she had a meeting with Superintendent Query and was informed that a rubric had been filled out by each committee member on the 49 questions Plaintiff was asked. When Plaintiff inquired when the committee filled it out since they did not fill it out during Plaintiff's actual interview, Superintendent Query did not know or would not say when the committee filled out their rubrics. He only stated that Plaintiff had scored higher on curriculum, and the male candidate scored higher on leadership. No proof of these conclusions, however, were ever presented to Plaintiff.

55. During that same meeting, Plaintiff also informed Superintendent Query that she had taken issue with what he had stated during their first meeting that this was not a man vs. woman issue. He informed Plaintiff that he had made that statement due to something that a former superintendent of Flippin Schools had said to Plaintiff more than five years earlier: that a woman would never be an administrator at Flippin.

56. While employed with Defendant, Plaintiff had previously interviewed on three separate occasions for school principal positions with Defendant during the school years of 2002-2003, 2003-2004, and 2005-2006. On each of these three previous occasions, Plaintiff was chosen for an interview, Plaintiff was not the only female chosen for the interviews, and a male was chosen for the position.

57. Furthermore, Plaintiff also has personal knowledge of several other qualified females who have applied for administrative positions with Defendant over the years and have ultimately lost the position to male candidates after their interviews.

58.   While on its face, the rubric of 49 questions used by Defendant to interview their applicants may be a facially-neutral employment practice used by Defendant, the rubric is biased and discriminatory towards females as applied to female applicants, and it has a substantially disproportionate adverse impact upon female applicants applying for Defendant's administrative positions.

59.   The city of Flippin which houses Flippin School District is located in Marion County, Arkansas.

60.   According to the U.S. Census Bureau, the 2000 Census Demographic for Marion County, Arkansas, showed a population of 16,140 people, with 50.5% of the population being comprised of females and only 49.5% of the population being comprised of males. The 2005-2007 Census data for this region was unavailable. See copy of 2000 Census Demographic for Marion County attached and marked as Plaintiff's Exhibit "B" and incorporated herein by reference.

61.   According to the U.S. Census Bureau, the 2000 Census Demographic for the City of Flippin, Arkansas, showed a total population of 1,357 people, with 53.9% of the population being comprised of females and only 46.1% of the population being comprised of males. The 2005-2007 Census data for this region was unavailable. See copy of 2000 Census Demographic for Flippin, Arkansas, attached and marked as Plaintiff's Exhibit "C" and incorporated herein by reference.

62.   Further, according to the U.S. Census Bureau, the 2000 Employment Status and Commuting to Work demographic for the City of Flippin, Arkansas, in Marion County showed a total of 49.9% of females in Flippin, Arkansas, being employed in labor

12

force out of a total 55.2% of the general population of Flippin, Arkansas, in Marion County who are employed in labor force sixteen years of age and over. See copy of 2000 Employment Status and Commuting to Work for Flippin, Arkansas, attached and marked as Plaintiff's Exhibit "D" and incorporated herein by reference.

63. Equally, according to the U.S. Census Bureau, the 2000 Summary of Sex by Occupation for the Employed Civilian Population 16 Years and Over for Marion County, Arkansas, shows that of the 3,318 total men employed in Marion County, Arkansas, 261 of them are employed in professional and related occupations and of that 261 men only 40 of them are employed in education, training and library occupations; whereas, of the 2,819 total women employed in Marion County, Arkansas, 490 of them are employed in professional and related occupations and of that 490 women 212 of them are employed in education, training and library occupations. See copy of 2000 Summary of Sex by Occupation for the Employed Civilian Population 16 Years and Over for Marion County, Arkansas, attached and marked as Plaintiff's Exhibit "E" and incorporated herein by reference.

64. Finally, according to the U.S. Census Bureau, the 2000 Summary of Sex by Occupation for the Employed Civilian Population 16 Years and Over for Flippin, Arkansas, shows that of the 446 total men employed in Flippin, Arkansas, 16 of them are employed in professional and related occupations and of that 16 men none of them are employed in education, training and library occupations; whereas, of the 581 total women employed in Flippin, Arkansas, 29 of them are employed in professional and related occupations and of that 29 women 13 of them are employed in education, training and

library occupations. See copy of 2000 Summary of Sex by Occupation for the Employed Civilian Population 16 Years and Over for Flippin, Arkansas, attached and marked as Plaintiff's Exhibit "F" and incorporated herein by reference.

65. Despite all of the geographical statistics evidencing that more women live and are employed in both Flippin, Arkansas, and Marion County, Arkansas, to Plaintiff's knowledge and belief, a female has never held an administrative position with Defendant.

66. As a result, there is a causal link between the rubric used by Defendant to interview applicants for their positions and the adverse impact that this biased and discriminatory rubric has upon Defendant's female applicants when applied to female candidates.

67. Defendant's use of this discriminatory and biased rubric to interview their applicants has a disparate impact on the class of females of which Plaintiff is a member, and it serves to eliminate females from being hired by Defendant in administrative positions.

68. Plaintiff was not hired by Defendant because she is female and Defendant has a pattern of sexual discrimination against women in regards to their hiring practices for administrative positions, and Plaintiff refers to all of the facts and allegations as set forth in this Complaint as the basis for this claim.

69. As such, Plaintiff can establish a claim under Title VII of the Civil Rights Act of 1964 in that Defendant's rubric used in interviewing has a disparate impact upon females in the hiring process and denies female applicants employment in the position of Flippin Elementary School Principal K-5 by Defendant.

70.     Plaintiff has been damaged in that she was denied hire to the position of Flippin Elementary School Principal K-5 based upon acts of Defendant that rise to disparate impact based upon sex in violation of Title VII of the Civil Rights Act of 1964. Plaintiff asks that the following damages be awarded to her: a court-ordered, permanent injunction to eliminate discriminatory practices in hiring by Defendant; back pay and front pay, or in the alternative damages in an amount equal to the amount of the yearly salary she would have received until she was eligible for retirement from Defendant in an amount in excess of $75,000.00; punitive damages; and Plaintiff's costs and attorney's fees associated with this action.

WHEREFORE, Plaintiff prays for judgment in Count II against Defendant; for actual damages in an amount as is fair and reasonable; for her attorneys' fees, interest and costs; and for all further relief the Court deems just and proper.

Respectfully Submitted,

LAURIE R. CRAMTON

By: *(signature)*

John O. Russo, AR Bar No. 2005159
Andrew S. Bailey, AR Bar No. 2006060
Bailey & Russo, PLC
714 South Church Street
Mountain Home, Arkansas 72653
Office (870) 424-2550
Facsimile (870) 424-9978

## VERIFICATION

I, Laurie R. Cramton, the Plaintiff herein, state that I have read the above and foregoing Complaint and the facts contained therein are true and correct as I verily believe.

*Laurie R. Cramton*

Laurie R. Cramton

STATE OF ARKANSAS     )
                                            )
COUNTY OF BAXTER    )

Subscribed and sworn to before me, the undersigned Notary Public on this 6th day of February, 2009.

*Diana Schultz*

Notary Public

OFFICIAL SEAL - NO. 12363352
DIANA SCHULTZ
NOTARY PUBLIC-ARKANSAS
BAXTER COUNTY
MY COMMISSION EXPIRES: 11-09-17

My Commission Expires: 11-09-2017